UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>DENNIS SHOLLER,<br>　　　　　Defendant. | Case No. 17-cr-00181-SI-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br>Re: Dkt. Nos. 105, 112 |

On May 15, 2020, the Court held a telephonic hearing on defendant Dennis Sholler's motion for compassionate release. Dkt. Nos. 105, 112 ("Mot."). Counsel for the government and for defendant were present on the phone. Defense counsel confirmed that to the extent defendant has a right to appear at and participate in the hearing, he waives that right.

For the reasons set forth below, the Court GRANTS defendant's motion.

**BACKGROUND**

On April 11, 2017, defendant was indicted on one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Dkt. No. 1. Following defendant's arrest on April 14, 2017, Chief Magistrate Judge Spero ordered defendant detained on April 19, 2017. Dkt. Nos. 7, 8. Defendant has been in continuous federal custody ever since. Mot. at 6.[1]

On June 14, 2018, defendant pleaded guilty to one count of attempting to transfer obscene material to a minor, in violation of 18 U.S.C. § 1470. *See* Dkt. No. 84. The parties agreed to seek

---

[1] In his motion, defendant states that he has been in federal custody since April 13, 2017. Mot. at 6.

a sentence between 90 and 108 months, *see* Dkt. No. 92 ("Def.'s Sent. Memo.") at 4, an upward variance from the Sentencing Guideline range of 51 to 63 months. *See* Dkt. No. 88 ("PSR") at 23.[2] In his sentencing memorandum, defendant noted that there was an open "question of whether Mr. Sholler's current mental deterioration and his hand tremor indicate that he suffers from a Major Neurocognitive Disorder—such as the beginnings of Parkinson's disease, Alzheimer's disease, traumatic brain injury, or another such neurological condition." Def.'s Sent. Memo. at 11. Defendant therefore requested that the judgment include language regarding a future application for compassionate release. *Id.* at 11-12.

On November 9, 2018, the Court sentenced defendant to 90 months in custody followed by a term of three years of supervised release. Dkt. No. 99. The judgment, which pre-dated the passage of the First Step Act (effective December 21, 2018), included the following language:

> Should the defendant, pursuant to 18 U.S.C. § 3582(c)(1)(A) and 28 C.F.R. § 571.61, submit to the warden a request for motion for reduction in the term of imprisonment based on medical circumstances, the Court acknowledges that the defendant's potential medical conditions were not taken into consideration in imposing the sentence. The Court further agrees to defer to the findings of the Director of the Bureau of Prisons with respect to the defendant's medical circumstances, and if the Director grants the defendant's request under 18 U.S.C. § 3582(c)(1)(A), based on the defendant's medical circumstances, the Court agrees to consider reducing the term of imprisonment.

*Id.* at 2.

Defendant is housed at FCI Terminal Island and has an anticipated release date of August 11, 2023. *Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (BOP register number: 24204-111) (last visited May 15, 2020). FCI Terminal Island is currently on lockdown and inmate use of email stations is suspended until May 18. https://www.bop.gov/locations/ institutions/trm/ (last visited May 15, 2020).[3]

On January 21, 2020, defendant filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. No. 105. Defendant asked that the Court appoint counsel to assist

---

[2] For ease of reference, citations are to the page numbers assigned by the Court's Electronic Case Filing (ECF) system or, for sealed documents, to the pdf page numbers, rather than to internal page numbers on the documents themselves.

[3] Inmate access to telephones was also suspended but has since been restored. *See* https://www.bop.gov/locations/institutions/trm/ (last visited May 15, 2020).

him with filing his motion before considering his request. *Id.* at 5. Defendant stated that he submitted his request to the Warden of FCI Terminal Island on April 16, 2019, and attached a copy of that request.[4] *Id.* at 1, 5, 13.

On January 27, 2020, the Office of the Federal Public Defender filed a statement that it would be assuming representation of defendant on his motion for compassionate release and that it intended to file an amended motion but first needed relevant Bureau of Prisons records. Dkt. No. 107. At defendant's request, the Court continued the status conference on the motion to May 15, 2020. Dkt. Nos. 109, 110, 111.

On May 8, 2020, defendant filed the present amended motion for compassionate release. Dkt. No. 112. On May 13, 2020, the government filed an opposition. Dkt. No. 116 ("Opp'n").

## LEGAL STANDARD

Defendant has filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). As amended by the First Step Act, that statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).[5]

---

[4] The government agrees defendant submitted his petition to the Warden on that date. *See* Opp'n at 7.

[5] Subsection (ii) of the statute provides a separate avenue for sentence reductions for prisoners who are at least 70 years of age and who meet other conditions not applicable here. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

The parties agree that U.S.S.G. § 1B1.13 provides the relevant policy statement for reductions in the term of imprisonment under 18 U.S.C. § 3582(c). Mot. at 11; Opp'n at 3; *see also United States v. Eberhart*, No. 13-cr-313-PJH, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (following the guidance of the Sentencing Commission while noting that the policy statement has not been amended since the passage of the First Step Act). In the application notes, the Sentencing Commission provides that "extraordinary and compelling reasons" exist under certain circumstances. Of relevance here are the following:

**(A) Medical Condition of the Defendant.--**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.[6] The application notes further state, "For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of

---

[6] Other circumstances, not applicable here, include: defendants who are at least 65 years of age, are experiencing a serious deterioration of physical or mental health because of the aging process, and have served at least 10 years or 75 percent of the term of imprisonment; defendants whose minor child's caregiver dies or becomes incapacitated; or defendants whose spouse or registered partner becomes incapacitated, where the defendant would be the only available caregiver. U.S.S.G. § 1B1.13 cmt. n.1(C), (D).

sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." *Id.* § 1B1.13 cmt. n.2.

The Commission also requires the defendant not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). Section 3142(g), which governs release or detention of a defendant pending trial, lists the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## DISCUSSION

Defendant, who is 73 years old, argues that his situation is "extraordinary and compelling" for three reasons. Mot. at 12. First, he argues that his Parkinson's disease qualifies as a terminal illness under the Commission's policy statement, application note 1(A)(i). Second, he states that his various medical conditions in combination qualify as "a serious physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover[,]" under application note 1(A)(ii). *Id.* (citing U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)). Third, he states that the COVID-19

5

pandemic "presents an additional extraordinary and compelling circumstance that further warrants compassionate release for Mr. Sholler, who is a high-risk fatality patient." *Id.* at 12-13 (citing U.S.S.G. § 1B1.13, cmt. n.1(D)). Defendant asks for a reduced sentence of time served. Defendant proposes two alternative plans if the Court grants his release: (1) that the Court commute his term of imprisonment to time served and amend the conditions of his supervised release to include a two-month period in a halfway house, while defendant restarts his disability and Veterans Affairs ("VA") benefits; or (2) that the Court commute his sentence to home detention, with the plan that defendant would obtain temporary housing from the VA, at a location in Los Angeles yet to be determined. Pastor Decl., Ex. C.

The government opposes, arguing that defendant's medical conditions are "chronic but manageable," that defendant can perform 50% of his daily activities in prison, and that his release poses a danger to the community.[7] Opp'n at 9-10, 15. The government also argues that the "catch-all" provision of U.S.S.G. § 1B1.13 application note 1(D) does not apply to this case. *Id.* at 8 n.3. The government urges that if the Court is inclined to grant the motion that the Court "substitute a term of probation or supervised release with a condition of home confinement for the duration of Defendant's current sentence of imprisonment until August 11, 2023." *Id.* at 13 n.5. The government also requests that the Court only authorize release after defendant's release and travel plans are in place and that it set any release for 14 days from the date of the Court's order so that BOP may quarantine defendant prior to his release to prevent potential spread of COVID-19 in the community. *Id.*

Having carefully considered the parties' papers, the Court hereby GRANTS the motion for compassionate release, finding extraordinary and compelling reasons warrant it. Based on the medical records submitted, including the findings of the BOP itself, defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not

---

[7] The government's papers also state that defendant has served only 18 months, or roughly 20%, of his sentence; however, at the hearing, the government conceded that this was an error and that defendant has served approximately 40% of his sentence.

expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Defendant has submitted a medical summary from the Bureau of Prisons ("BOP"), dated April 8, 2020, indicating that he has the following diagnoses: Parkinson's disease, major depressive disorder, acute sinusitis, diabetes mellitus (type II), hyperlipidemia, ulcerative colitis, and COVID-19 virus infection. Mot., Ex. A at 3 (filed under seal). The BOP states that defendant has "an incurable, progressive illness," which defendant identifies as his Parkinson's disease.[8] *See id.* The BOP further states that defendant has "suffered a debilitating injury from which he will not recover" and that defendant is "completely disabled, meaning he can not carry on any self-care and is totally confined to [a] bed or chair[.]" *Id.* The medical records also show that defendant was issued a wheelchair and a pusher in November 2019. *Id.* at 41.

The government cites a finding in defendant's BOP medical summary, which defendant submitted in support of his motion, stating that he can perform 50% of his daily activities. *See* Opp'n at 9. However, BOP medical documentation that the government submitted sheds further light on this statement. *See* Pastor Decl., Ex. B (filed under seal). Among other items, as of May 8, 2020, a BOP social worker found that defendant needs assistance to use the computer; needs assistance to plan and prepare snacks/meals outside of food services; performs light daily tasks but cannot maintain acceptable levels of cleanliness; cannot do his laundry; and, once released, would be able to travel only by taxi or car with the assistance of another, but would not be able to take public transportation or arrange his own travel via taxi. *Id.* at 3. In sum, it appears that multiple documents from the BOP show defendant is less able-bodied than what the government implies.

The current COVID-19 pandemic is an additional consideration weighing in favor of compassionate release. The government reports that defendant tested positive for COVID-19 on April 11, 2020, and that he was treated at a local hospital from April 14 to April 22, when he was

---

[8] Two of the medical documents submitted indicate that defendant was diagnosed with Parkinson's disease prior to his conviction in this case. *See* Mot., Ex. A at 17 (reporting that defendant said he was diagnosed with Parkinson's 25 years ago) (filed under seal); *see also* Pastor Decl., Ex. B at 2 (BOP medical review stating defendant was diagnosed with Parkinson's in approximately 2008) (filed under seal). However, at the time of sentencing, it appears that the parties suspected defendant might have Parkinson's but that he had not yet been diagnosed. *See* Def.'s Sent. Memo. at 11; PSR at 16.

discharged back to Terminal Island. Opp'n at 5. The parties agree that it remains unclear whether recovering from COVID-19 renders one immune from new infection. *See id.* at 12; Mot. at 15. Defendant argues that, in the absence of such information, he remains vulnerable. At the very least, the Court disagrees with the government's position that defendant would be at lower risk of reinfection at Terminal Island, which has seen seven prisoners die of COVID-19 and has recorded the second-highest number of infected prisoners in the BOP system, than he would at a halfway house. *See* Opp'n at 13; Richard Winton, *After seventh coronavirus death at Terminal Island, congresswoman says inmates lack protection*, L.A. Times, May 12, 2020, https://www.latimes.com/california/story/2020-05-12/7th-inmate-dies-congresswoman-says-lack-of-protection-is-killing-terminal-island-inmates. Defendant is especially vulnerable to severe illness from COVID-19 due to his age and numerous pre-existing conditions. The Centers for Disease Control and Prevention states that "older adults and people of any age who have serious underlying medical conditions might be at higher risk of severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 15, 2020). Based on current data, the CDC states those at higher risk for severe illness from COVID-19 include persons age 65 and older and those any age with underlying medical conditions, particularly if not well controlled, and specifically calls out diabetes. *Id*.

The Court has considered the applicable sentencing factors from 18 U.S.C. § 3553(a) and finds that they are consistent with granting defendant's motion for compassionate release. Among other considerations, the "need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner" weighs in favor of early release. *See* 18 U.S.C. § 3553(a)(2)(D).

Finally, in light of the fact that the BOP has determined that defendant has an incurable, progressive illness and is completely disabled and totally confined to a bed or chair, *see* Mot., Ex. A at 3, the Court agrees with defendant that his release does not pose a danger to the community. This is particularly so where the BOP has also found that defendant cannot use a computer or arrange for travel without assistance. *See* Pastor Decl., Ex. B at 3. The Court will order that defendant's sentence be commuted to time served, with his three-year period of supervised release to begin immediately, and with the additional amended condition that his supervised release include a six-

month stay in a halfway house in this District. For those three years, defendant will remain subject to the conditions of supervised release imposed in the judgment, which include registering as a sex offender, not loitering within 100 feet of any location where children are likely to gather, enrolling in the probation office's Computer and Internet Monitoring Program, and consenting to the probation office's installation of hardware or software to monitor his internet use. *See* Dkt. No. 99 at 5. Although defendant's crime was a serious one, the Court is satisfied that these measures, coupled with defendant's disabling medical conditions that are only expected to deteriorate further, are sufficient to safeguard against any threat he may pose to the community.

Congress has entrusted the courts with imposing sentences "sufficient but not greater than necessary." 18 U.S.C. § 3553(a). Defendant has served roughly 38 months of a sentence for which the Sentencing Guideline range was 51 to 63 months. Given defendant's age and medical condition, there are extraordinary and compelling reasons in this case to grant compassionate release. His release does not undermine the sentencing objectives espoused in 18 U.S.C. § 3553(b).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion for compassionate release. Sholler's sentence of imprisonment is modified to time served. Sholler shall complete the three-year term of supervised release imposed in the original sentence subject to the original conditions, *see* Dkt. No. 99, with the additional special condition that the first six months of his supervised release shall occur in a halfway house.

The Warden of FCI Terminal Island shall place Sholler in quarantine immediately, so that he may serve a 14-day period of quarantine before his release. Sholler is to be released from BOP custody at 5:00 PM PDT, May 29, 2020. The government shall serve a copy of this Order on the Warden at FCI Terminal Island immediately.

**IT IS SO ORDERED**.

Dated: May 15, 2020

SUSAN ILLSTON
United States District Judge